Let's just let everyone get completely settled. I feel like we're at a cocktail party, all this water being poured. Okay, Mr. Hurley. May it please the Court, my name is Grady Hurley, and along with my co-counsel Susan Daigle, we represent the appellant Tesla Offshore. The Fifth Circuit remanded a review of insurance policy coverage to the District Court, which we have argued that the District Court failed to do. We are asking this Court to give meaning and effect to policies of insurance, naming Tesla as an insured or additional insured within the intent of Exhibit A in Clause 11 of a contained distinct obligations from the Clause 9 contractual indemnities. Where the additional insured provision is separate and distinct from the indemnity provisions, the scope of the insurance is not limited by the indemnity clause. We believe that the law is clear on that, and we have cited the Adafina case, the McCartnett v. Chameron case, which Judge Barksdale is familiar with, and Jones v. Capitol, which is a Louisiana Fourth Circuit decision. As stated by Judge Polizzi in LeBlanc v. Global Drilling, if the parties wanted to condition additional assured status on the indemnity obligation, they could have easily have stated that. Presently, they did the opposite. The insurance in Clause 11 in Exhibit A was not to the extent of the indemnity and was connected with the services, which was a defined term. What we are arguing before this Court is that we are not asking integrity, or we're not suing integrity for failing to name us as an additional insured. We have sued the insurance companies under the contract that they issued, and it is our contractual insurance language that Tesla should be an assured or an additional assured. The District Court focused on the decision of Becker v. Tidewater, which we believe, for two reasons, is not the controlling decision in this case. First, the Becker decision contained reciprocal indemnities, and there was no separate Clause 11, as is in the present case. The Clause 11 in this situation is significant, as read with Exhibit A. First, it does not tie any of the insurance directly to the indemnity obligations. The Clause 11 obligations in Exhibit A are in addition to any contractual indemnities. In Becker, there were reciprocal indemnities and no similar Clause 11. The risk and liabilities assumed for providing insurance in Clause 11 included the providing of services arising out of or connected with the services. Services was clearly defined in the contract as the furnishing of a vessel, and that is where this incident arose from. This Court is well familiar with the facts of this case, and as Judge Brown may have said in his day, this was another one of those Donnybrook offshore cases, where there was an offshore sonar taking place, and the towing vessel was unable to locate its tow, which was submerged and located up to a mile to two miles behind the tow. In order for Tesla to complete its towage operation, it had to know where its tow was located. Why? In order to avoid its tow striking bottom, or in order to maintain closest points of approach and to avoid collision or elisions with offshore objects. That is why a second vessel was charted. It was charted to be the eyes of the tow, to spot the tow, and to provide warnings. It is undisputed that there was an insured contract. Tesla was operating the tow, or as you call it, the tow fish. It was Tesla's tow fish, and Tesla was operating it. Tesla was in control of the towage operations which required two vessels. The towing vessel, as the Fifth Circuit recently held, was the international vessel. Where were the Tesla personnel? Which vessel were the Tesla personnel? Both. It was important, in order for the tow to be completed, there be communication. This was a single enterprise or a tandem between two vessels. There was a survey party chief on the Lady Joanna, and there was a survey party chief on the International Thunder. It was required to be on both vessels because the towage required, quite frankly, two vessels. We believe that the real issue in this case, which Judge Afric did not look at, was whether the policies of insurance provided coverage to Tesla. We believe that the case law in the Fifth Circuit clearly states that you look at the policy of insurance to see what the language says. Does the policy of insurance say that the coverage is limited by indemnity language, or does it have other language? In this case, both policies, well, one of the policies of insurance referred to an insured contract, and once you had the insured contract, the question then becomes, under the terms and conditions of the insurance policies, would Tesla be considered as an insured or as an additional sure? We believe that, first, if we look at the bumper shoot policy, which was issued by New York Magic, that that is a unique policy in and of itself. We argue to this Court that it's both a bumper shoot policy, which is an umbrella policy that covers all risk, as well as an excess policy. Why do we say that? Well, when you look at the terms and conditions of the New York Magic policy, on the first page, it's interesting, is that it refers to the application of insurance that it had on file, which describes the operation of the Lady Joanna as a chase vessel to locate Tesla's tow fish. Under Clause 1, well, the first part of it is the insuring agreement. And under the insuring agreement, there is coverage. Clause A refers to, and it's the bumper shoot language, P&I, and is including but not limited to the underlying P&I coverage. That is significant because it can provide dollar one coverage. It is under the bumper shoot. It is not limited by the P&I because it covers all P&I risk. It is also an excess policy, and the excess policy is also found under Clause 4. And under Clause 4, it refers to it as an excess policy, including each occurrence not covered by the underlying policy. And then Clause 5 is then the dip down clause, which we have discussed in our brief. We believe that the term, as defined by the assured in the New York Magic policy, in respect to the operations by and on behalf, covers the liabilities of Tesla. In addition, we have also argued that the additional assured clause was meant to cover the risk that were present in this case. What do you do with the fact, though, that this court and the earlier appeal decided that the work of the Joanna was independent of any liability that Tesla may have incurred? Sure. And I think that is part of the confusion in the district court. The district court was interpreting the insurance, was interpreting the indemnity language. As this court is well aware that in looking at indemnity language, that indemnities are strictly construed, and you look for your talismanic words. The court was looking at the indemnity language and determining whether or not there was indemnity language arising out of. The court was not looking at the number of cases that this Fifth Circuit has looked at, including the Mid-Continent case and even the Amasco case, which you wrote, which followed the Red Ball decision, which clearly held that when looking at arising out of or connected with language, and you also have to remember that on the Clause 11, the language was different than the indemnities. But insurance policies are liberally construed as opposed to indemnity language. Insurance policies are construed in order to provide coverage unless, and they have to be proved by the insurer that there was an exclusion. So the finding by the previous Fifth Circuit was that it did not arise out of or purposes of the indemnity language, but citing the Holden decision and other decisions, the Fifth Circuit panel clearly held that you have to look at and interpret the language of the insurance policies, especially where the insurance and indemnities are distinct and separate obligations. If the Court wanted to, as I think, Your Honor, you wrote in Barksdale, if the parties wanted to limit the insurance to the indemnities, they could have clearly stated that. If the policies of insurance wanted to tie in the insurance coverage to the indemnities, they could have done that. In this case, we respectfully argue that the insurance was not tied to the indemnities, and more importantly, the language in the insurance policies were not tied to the indemnities. The language of Section 11 is covering third-party claims arising out of or connected with the performance of service hereunder. Am I reading the right language? Sorry, Section 11? Yes. Yes, Your Honor. Third-party claims arising out of or connected with the performance of service. Correct. Doesn't performance of service — I assume that refers to the operation of the — The performance of service is a defined term which includes the supplying of equipment and vessels. And so does it arise out of the time chart, which was the providing of the Lady Joanna? Right. And — What did Judge Smith's point that — Excuse me, sir? What did Judge Smith's point that we've already held that the performance of the operation of Joanna wasn't an approximate cause of the elision? I would first argue that that was in the indemnity context and not in the insurance context because they were focusing on the arising out of language. Secondly, what I would argue, Your Honor, is that the court should not have been focusing on 11B but should be asking whether the policies of insurance, which is a contract between the insured and the insurer, provided limiting language. And what I would suggest, Your Honor, is that the connected with language in the insurance context has been broadly interpreted to include incident two flowing from was Tesla, as one of the courts asked, in control of the vehicle. So the interpretation of that clause in the insurance context is broader than in the indemnity context. But what we're asking this Court to do is to look at or to recognize the fact that this is not a claim against integrity for failing to obtain additional insured coverage, but to look at the agreement that we have with the MCL and with the bumper shoot to see if there is coverage under the language of that agreement. And, Your Honor, when we look at the cases that we have cited to you, this is not the first time that we have had this complex situation. You know, these issues arose, a number of these issues arose in the context of the Deep Water Horizon incident. There were a number of cases in the Fifth Circuit where there were separate insurance and indemnity clauses. And the case that, or the latest case that summarized the Adofino case, the In Re Horizon case, and all the other cases, is the Liberty Surplus Lines cases. And in those cases, the insurance and indemnity clause were separate. They looked at and defined the term your work under the insurance policies. There was not an obligation that the Lady Joanna or that the integrity be negligent. That is not a sine qua non. As Judge Smith, as you wrote in Amasco, the arising out of and connected with language in the insurance context is not based upon proximate cause, but also flowing, growing out of. There's need not be caused by the negligent operations of vehicles. And the Amasco decision — I'm afraid your initial time has expired now, Mr. — Yes, thank you, Your Honor. Can you save rebuttal for Ms. — We would. There you go. Thank you. Okay. Ms. Martin. Good morning. May it please the Court, I'm Cindy Martin on behalf of Appleys, One Beacon Insurance Company, an Atlantic specialty insurance company. For convenience, I'm going to refer to both Appleys as One Beacon. Your Honor, the insuring agreement stated in the One Beacon policy states, we, One Beacon, will pay those sums that the insured becomes legally liable to pay as damages because of bodily injury or property damage to which this insurance applies. So, axiomatically, two things have to exist. One, insured status for the person making or entity making the claim. And two, the policy must cover the claim that's being asserted. In this case, neither condition exists. Now, the district court below focused mostly on the insured status question and ruled that it didn't have to reach the coverage issues because, you know, you can't have one without the other. I'd just like to briefly mention a couple of the coverage issues just because I don't want them to get lost in the shuffle and that we're still asserting them. The first coverage issue we have is that there's an express condition precedent to coverage in this policy that states that the main insured, which would be Integrity or Siegel, must maintain protection and indemnity insurance, an SB 23 form or equivalent, and that policy has to have contractual liability coverage. If this condition of precedent to coverage is breached, then all coverage on the policy is void for any and all insureds, and it doesn't matter whether or not the loss is related to the breach of the warranty. In this situation, it's undisputed that neither Siegel nor Integrity had the requisite P&I policies. They obtained P&I policies separately from National Fire Insurance Company. They were on the AMU form, not the SB 23 form, and, again, undisputably, they did not have contractual liability coverage. So that right there voids the policy as to any insured. Our second coverage defense is that there is a, quote, other insurance clause in this policy, which operates as an escape clause. So if the insured, any insured, has another insurance policy which would respond to the claim, then this policy, One Beacon's policy, will not likewise respond. It's undisputed, again, that Tesla had insurance to cover this claim, and, in fact, that Tesla's insurance paid its liability to Shell, paid its judgment to Shell. So right there, the policy does not provide coverage for Tesla's claims, even if it wasn't insured, which is, of course, emphatically denied. Now, as to Tesla's arguments that this policy doesn't reference the underlying MSA, I have to say that's simply incongruous with the Becker decision, and we'll get that in just a minute. In order for Tesla to be insured on this policy, he has to come under the additional insured endorsement, because, as Tesla admits, it's not a named insured, and it wasn't added by a specific endorsement. The additional insured endorsement states, Section 4 of the policy is amended to include any person or organization that you are obligated by an insured contract to include as additional insured, but only with respect to the liability arising out of, quote, your work, unquote. All the terms and conditions remain unchanged. So, their argument that you can't go back and look at what the MSA says kind of lacks common sense. It says that you are obligated by an insured contract. Obviously, to understand what the contract obligates them to do, you would have to go Now, I'm going to sort of stick a pin in that a little bit, because I think the second part of this clause is actually determinative. No matter what the underlying contract says, the purported additional insured would only be included with respect to the liability arising out of, quote, your work, unquote. And as has come up with the panel's questions earlier, it's already been cited by a prior panel that the liability for which Tesla seeks coverage did not arise out of the work of Integrity Siegel or the Lady Joanna. It was pretty emphatically stated, clearly stated, that the Lady Joanna's operation was undisputably successful. That's a quote from the prior panel. And it was completely independent of the cause of the severing of the mooring line, which is Tesla International Offshore's negligence. Okay. So that alone is enough to defeat their claim for additional insured status. The second part of that, though, does require us to go back and look at the underlying contract. So in the Becker decision, the Court stated, in order to determine if the purported additional insured is an additional insured, we must read the insurance and indemnity provisions of the underlying contract in conjunction in order to properly interpret the meaning of the contract. And that's the Becker decision at 586 F3rd, 358 at 370. So clearly, the last pronouncement on this from the Fifth Circuit is that when we have a clause such as this, we must go back to the policy and go back to the contract and look at what it says. Now, in the contract, in the Becker case, it says, the risk assumed, the requirement as additional insured is limited to, quote, the risk assumed by, parenthesis, Tidewater in this charter. That's similar to what we have in our contract here. Then in the insurance policy, additional insured status under the blanket endorsement is premised on, obligated by virtue of a contract or agreement. Those phrases are very similar to the contract we have here and the insurance policy we have here. So to me, Becker is basically indistinguishable on those points as far as how we're supposed to proceed in these situations. Now, in the underlying contract, yes, there's an indemnity provision. That's Section 9. Section 11 is insurance. In Section 11A, it states that Sea Eagle is only required to obtain insurance to protect Sea Eagle or Tesla from liability third-party claims arising out of or connected with the performances of services here under. So they're only obligated to get insurance in the first instance for liability which will rise out of the operation of the Lady Joanna. That was the only services that were being provided at the time of this incident. 11B goes on to say, all insurance policies of contractor, which would be Sea Eagle, related to services shall, to the extent of risk and liabilities assumed, this agreement, add Tesla as an additional sure. So they weren't obligated to provide insurance for anything. They weren't obligated to provide insurance for anything other than that would rise out of the operation of the Lady Joanna. But even so, whatever their obligation was to add them as additional sure was limited strictly to those risk and liabilities assumed, which would be the indemnities. And as the prior panel of this Court already found, they did not owe indemnity. Hence, they cannot be an additional sure on a policy. I'd like to reserve my remaining time unless you have some questions. Yes, thank you, Ms. Mark. Mr. Webb? May it please the Court, I'm Dan Webb. Excuse me. And I represent New York Marine and General Insurance Company, affectionately known as NIMAGIC. We agree with all the factual findings of both the District Court and the Appellate Court. That's no surprise. I know that. I know that, Your Honor, but I wanted to make it crystal clear. The District Court considered all the insurance issues and found in favor of the insurers. And if you look at the policy that New York Marine and General supplied, its named insured was Integrity Fisheries, Inc. The owner and operator of the Lady Joanna is Sea Eagle Fisheries, Inc. Sea Eagle Fisheries, Inc. is nowhere listed in the NIMAGIC policy as an insured, and it does not fall within the definition of other parties that could be insured. There is no additional insured clause in our policy. That was found by the District Court, by the way. The District Court, when it looked at what NIMAGIC was covering, looked at the definition of the policy of insured and concluded that Tesla did not fall within that definition. It found the definition was clear and unambiguous. The Court's analysis found that Integrity was obligated to furnish Tesla with the type of insurance offered by the NIMAGIC policy, but there had to be a connection. The NIMAGIC policy was limited to those organizations only with respect of operations by or on behalf of Integrity. Well, guess who wasn't there? Integrity. No people, no equipment, no nothing. So you have Integrity that has packed up its vessel and gone. You have Sea Eagle Fisheries who's brought a new vessel out. So Tesla would be considered and insured, but only as related to any work by Integrity or on behalf of Integrity for Tesla. There was none, and you can't create it. Integrity, as I said, was not even at the scene of the elision. Tesla and its arguments for coverage address underlying P&I coverage as a unit, and if you really look at their reply brief and their original brief, they've changed from saying Integrity here and Sea Eagle here to it's now Integrity slash Sea Eagle as if they are a single entity. They are not. The record is very clear that they are not. So basically, Integrity Fisheries had a P&I policy. Coincidentally, issued by the same company that issued the P&I policy to Sea Eagle Fisheries, that Integrity P&I policy did not respond because there was no Integrity vessel nor Integrity involvement in the operation at the time of the elision. Rather, the Sea Eagle Fisheries P&I policy responded. It had its own P&I policy. It was a wasting policy, and at a certain point they decided to throw in the towel, and that policy was not listed in the schedule of underlying coverage in the NIMAGIC policy. So there is no connectivity between Sea Eagle Fisheries, its vessel, its operation, or anything to do with the insurance coverage which NIMAGIC provided. The district court reviewed the NIMAGIC bumper chute policy. It's clear from the record it's not a follow-form policy, as some people are claiming. There's record testimony at 4754 by a representative of a company that is over NIMAGIC that it's an independent policy. It's got its own terms and conditions, so we have to look at its own terms and conditions, which is exactly what Judge Afric did. The district court looked at the definition of assured and concluded Tesla did not fall within that, and again, that was a clear and unambiguous definition. Lest there be any doubt, we also considered Endorsement 1, Exclusion 25, which further excludes any coverage for Tesla. NIMAGIC did not provide any coverage for the benefit of Tesla. The court's role in interpreting insurance contracts is to ascertain the common intent of the parties to the contract. Here, there's NIMAGIC and Integrity Fisheries. Guess who's not a party to the contract? Tesla. So if you look at what was intended, there is no intent for NIMAGIC to provide coverage for an Integrity vessel that's not even there. There's no factual basis to conclude it was the intent of Integrity, nor NIMAGIC to provide coverage when Integrity's not even there. To conclude otherwise artificially enlarges the coverage. To conclude otherwise will have a significant practical impact on the offshore oil industry. It will upset the entire insurance model that we've all grown accustomed to following out there, which should lead to certainty after you sign your name on the dotted line as to what your rights and responsibilities are. The goal is to provide that certainty, not to have parties on the risk when they are not on site nor otherwise involved. It would be a surprise when that happens. An insurer cannot owe coverage when its name insured is not involved in an operation. The court has already found the incident does not and cannot arise out of Integrity's operations. End of story. Integrity did not have an owned, operated, leased, or chartered vessel involved in the incident. End of story. Overall, it's time to finally lay this matter to rest and place the responsibility for the damages where they should properly lie with Tesla and International. Any questions, please? All right. Thank you, Mr. Webb. Ms. Daigle, is there a time for rebuttal? Thank you, Your Honor. Good morning, Your Honors. Susan Daigle of Daigle Rayburn, co-appellate counsel for Tesla. Contrary to the appellee's argument, 11A is a risk and liability assumed by a contractor. 11A, it's a specific risk transfer insurance agreement separate from and in addition to the defense and indemnity agreement. Simply furnishing this vessel within the meaning of the definition of services is all that was required to trigger the assumed risk and liability of protecting Tesla, providing insurance to Tesla for third-party claims. That's the 11A risk and liability. Contractor could have purchased a policy for Tesla, insuring Tesla, but 11B gave contractor the right to simply add Tesla to their policies arising out of services. And that's what happened. The policies protect Tesla for Tesla's fault. There's no doubt that was the intent of 11A as carried out in 11B. And we're limiting it to this job. They don't insure the world. They insure Tesla for this job in which integrity was integrally involved. There's different triggering language, different triggering language from the defense and indemnity language, Your Honor. This court and the lower court interpreted strictly the defense and indemnity language, operation of the vessel, operation of the vessel. That was the defense and indemnity language. This court and the lower court felt that the actual movement of that vessel, movement of the Lady Joanna, didn't contribute to the cause. That's not what we're here about today, Your Honor. We're here about triggering language that triggers additional insured endorsements. What's required? You will never see this in the indemnity language. You will never see connected with. You will not see performance of service. You will not see the definition of service. Those are all the insurance obligations.  Service is specifically defined as a number of things, but also merely furnishing the vessel. When integrity substituted for the integrity, which broke down, and that New York magic policy added the Joannas to continue integrity's operation, service is being performed. The additional insured obligations are triggered. Nowhere in this agreement is there a reference, our insurance obligations are tied to our defense and indemnity. Indemnity, separate part of the policy, completely separate language. B talks about to the extent of risks and liabilities assumed by contractor in this agreement. It doesn't say in the indemnity part of this agreement. One beacon policy. One beacon fails to recognize Judge Smith's decision in Damasco, Judge Barksdale's decision in Mid-Continent. All of the cases, I think we cited nine, clearly setting out when their policy talks about liability arising out of. That doesn't mean the contractor had to be at fault. It means to the contrary, and all these courts say, if some kind of vicarious liability was being insured for Tesla for the fault of contractor, those policies had to do a specific job of stating that. They didn't in those cases, nor did these policies. Clearly, the sole negligence of Tesla is covered as it was intended to be covered. One beacon, very broad insurance agreement. Some is legally obligated to pay as property damage. Critically, the watercraft exclusion only applies to the contractor. It does not apply to Tesla, the additional insured. That one beacon policy covers Tesla's charter's liability for any of these vessels on the job and every other type of fault, every other type of general liability fault. All claims at issue in the underlying judgment are covered by the one beacon policy. If my time ends, Your Honor, which it is about to, Your Honors, we implore you to reread 1A1C, 4A4B, as set out by Mr. Hurley. New York Magic ignores those policy provisions, does not discuss them with the court. It's an excess policy above the underlying. It is also a fill-the-gap $1, $1 because there's no retained limit. You read all four of those provisions together, as in our record excerpts. That policy, New York Magic, comes above one beacon, comes above the P&I, covers protection and indemnity risk not covered by the P&I, covers all other claims. Every part of that underlying decision against Tesla is covered by New York Magic. And one beacon, Your Honor, provides coverage for all of the defense calls incurred by Tesla. Thank you, Your Honors. Thank you, Ms. Daigle. Your case and all of today's cases are under submission.